IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02850-REB-MEH

RIDGEVIEW CENTER LLC,

      Plaintiff,

v.

CANOPIUS US INSURANCE INC.,

      Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge.**

      This action arises out of damage to the real property of the Plaintiff Ridgeview Center LLC ("Plaintiff"), allegedly caused by a hail storm on May 8, 2017. Defendant Canopius US Insurance, Inc. ("Defendant"), which insured the property during the relevant period, filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of Plaintiff's breach of contract claim or a stay of the proceedings pending an appraisal process. Defendant also argues that Plaintiff failed to state plausible claims for bad faith breach of insurance contract ("common law bad faith") and violations of Colo. Rev. Stat. §§ 10-3-1115 and -1116 ("statutory bad faith"), and Plaintiff prematurely requested an award of exemplary damages under Colorado law.[1] In response, Plaintiff concedes the

---

[1]Defendant frames Plaintiff's request as a "claim" and seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). However, a request for exemplary damages is simply a request for relief and is not a "claim." Therefore, the Court construes Defendant's motion as a request to strike Plaintiff's exemplary damages request from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f).

need for an appraisal[2] and that its exemplary damages request is premature[3]; accordingly, the only issue remaining for the Court to determine is whether Plaintiff states plausible bad faith claims. For the reasons that follow, this Court respectfully recommends that the Honorable Robert E. Blackburn grant in part and deny in part the Defendant's motion.

## STATEMENT OF FACTS

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in the operative Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff, through its owner and registered agent, Joseph DeMott, purchased commercial property insurance from Defendant, Policy Number CUS046000456 ("Policy"), to insure its single story commercial building located at 9005-9105 W 44th Ave, Wheat Ridge, Colorado 80033 ("Property") for the period April 10, 2017 to April 10, 2018. The Policy covered losses due to, among other things, damages to Plaintiff's building caused by hail.

On May 8, 2017, a hail storm caused interior and exterior damage to the roof and other parts of the Property. Plaintiff timely filed with Defendant an insurance claim under the Policy for damages to the Property from the hail storm, which is a covered loss under the Policy. That is, on or about May 8, 2017, Mr. DeMott called his insurance broker, Sheri Gurule, to report the Property

---

[2]On February 4, 2019, the Court granted the parties' motion for a stay pending completion of the appraisal process. ECF No. 35.

[3]*See* Resp. 14. In addition, both parties attached documents outside of the pleading, but the Court made its findings based solely on the allegations in the operative pleading pursuant to Fed. R. Civ. P. 12(b)(6), as set forth below.

damage caused by the hail storm.

Defendant assigned claim number 50876JS to this insurance loss and hired Blair & Company as a Third-Party Claims Administrator to investigate the loss and adjust the claim. Blair & Company assigned the file to employee Julie Stehnike. On May 17, 2017, Ms. Stehnike sent a claims adjuster, Brandon Thompson, to inspect the damage to the Property. Despite the extensive damage, Mr. Thompson's inspection lasted only one hour and did not include an interior inspection of the Property. Mr. Thompson also failed to provide Mr. DeMott with any written documentation or information regarding the claim.

Shortly following Mr. Thompson's initial inspection, Plaintiff contracted with Colorado Continental Roofing and Solar ("CCRS") to provide Plaintiff with a damage estimate. At or about this time, Defendant hired John Gimple, P.E., from Gimple Engineering to inspect the roof. Mr. Thompson and Mr. Gimple returned to the Property to conduct a damage inspection on behalf of Defendant. Plaintiff provided Mr. Gimple and Mr. Thompson the opportunity to walk the Property (including both the exterior and interior of the building) and to ask questions regarding the scope of repair. Upon climbing onto and seeing the roof, Mr. Gimple told Mr. DeMott that the roof was "destroyed." Mr. Gimple immediately called Ms. Stehnike to explain the significance of the damage and stated that, in his opinion, the roof was as bad as it gets. A few minutes later, and while Mr. Gimple was still on the Property's premises, Ms. Stehnike called Mr. DeMott and stated, "you are getting a new roof."

Despite this statement, on June 14, 2017, Defendant provided Plaintiff with Mr. Thompson's replacement cost value ("RCV") estimate totaling $165,195.29, which was insufficient to replace the Property's roof. Mr. Thompson was a residential claim inspector and had no prior experience

contracting, estimating, or inspecting commercial flat roof claims. Due to Mr. Thompson's lack of knowledge, training, and experience, he produced an estimate that was significantly lower than what it should have been.

On June 27, 2017, Plaintiff provided Defendant with CCRS's RCV estimate totaling $723,413.76. However, Defendant relied on Mr. Thompson's estimate in refusing to pay CCRS's estimate and failed to take any further action over the next ten months.

On or about March 15, 2018, Defendant hired contractor, Jeff Herber, to conduct a second inspection of the Property and provide Defendant with a revised estimate. On May 3, 2018, Defendant provided Plaintiff with Mr. Herber's revised RCV estimate totaling $335,257.74. Both Mr. Thompson's and Mr. Herber's estimates failed to consider and/or properly value numerous damages and other line items, including but not limited to the SPF, pitch pans, gutters, interior repairs, termination bars, roofing, signage, rear sheds, gravity vents/restaurant fans, ceiling panels, sheathing, grow area, and siding. However, Defendant continued to rely on its own estimates.

After receiving Defendant's revised estimate, on May 23, 2018, Plaintiff hired Bryan Hubbard from United Restoration to conduct a second inspection. Mr. Hubbard conducted a thorough inspection of the Property and generated an RCV estimate totaling $965,528.09, which was provided to Defendant. Defendant refused to pay the United Restoration estimate. Accordingly, on June 19, 2018, Plaintiff hired a Colorado licensed public adjuster, Martin Shields, M.C.E., P.E., LEED-AP, of Shields Engineering Group, Inc. ("SEG") to assist the Plaintiff with its insurance claim. SEG conducted its own thorough investigation of the Property and determined Mr. Herbert's and Mr. Thompson's estimates contained numerous missing or drastically undervalued line items including but not limited to the Property's HVAC, interior and exterior elevations, outdoor signage,

SPF, sheathing, emergency repairs, and elastomeric coating, as well as all items listed above.

On July 17, 2018, Simon Chavez, SEG Project Architect, and Mr. Hubbard from United Restoration met with Mr. Gimple and Mr. Herber at the Property to allow Defendant once again to inspect the Property. During this inspection, Plaintiff gave Mr. Gimple and Mr. Herber the opportunity to walk the Property (including both the exterior and interior of the building) and to ask questions regarding the scope of repair. Mr. Gimple's and Mr. Herber's inspection lasted approximately one hour and they declined to inspect the building's interior.

On September 10, 2018, Defendant provided Plaintiff with its revised RCV estimate totaling $347,825.75. The estimate failed to include the items listed above. Consequently, on October 19, 2018, Plaintiff retained Thomas Miller, P.E., from Structural Engineering and Inspections, Inc. ("SEI"). On October 29, 2018, SEI conducted an extensive and thorough inspection of the Property and determined the scope of damage was in fact, greater than that reported by SEG. However, Defendant failed to pay actual cash value for the Property loss. Plaintiff believes that Defendant hired Mr. Heber, Mr. Gimple, and Mr. Thompson, because they are biased in favor of insurers and would give insurers result-oriented reports to assist Defendant in undervaluing or denying Plaintiff's hail damage insurance claim.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

In its Amended Complaint, Plaintiff alleged claims for (1) breach of contract; (2) violations of Colo. Rev. Stat. §§ 10-3-1115 and -1116 ("statutory bad faith"); and (3) bad faith breach of insurance contract ("common law bad faith"). Citing a recent Colorado Court of Appeals decision, Defendant argues the Plaintiff's bad faith claims must be dismissed because the "Amended Complaint establishe[s] the reasonableness of [Defendant's] conduct." Mot. 7 (citing *Bell Advisors, LLC v. Am. Family Mut. Ins. Co.*¸ 16CA2081 (Colo. App. Jan. 25, 2018)) (copy attached to Motion).

At the outset, the Court finds the decision in *Bell Advisors, LLC* inapplicable here because it involves an analysis pursuant to Fed. R. Civ. P. 56,[4] rather than (as required here) a Rule 12(b)(6) analysis, which determines whether the Plaintiff's factual allegations, taken as true, state a plausible claim for relief.[5] Furthermore, *Bell Advisors LLC* is unpublished and, therefore, not binding.

_____

[4]Defendant incorrectly asserts that "[t]he *Bell Advisors* insurer filed a motion for determination of law on the bad faith claims, and the trial court granted that motion ...." Mot. 7. Rather, the insurer filed a motion for summary judgment arguing that no genuine issues of material fact existed with respect to the plaintiff's bad faith claims; the motion for determination of law was filed regarding whether the insurance policy covered restoration of property "to like kind and quality." *See* Decision, ECF No. 21-1 at 2, 12, 19.

[5]In *Bell Advisors LLC*, the court made findings that could not be made in this case at this stage of the litigation such as, "Because [defendant's cause] determination comports with the engineer's report, and absent timely evidence that said report was inconsistent with industry standards, American Family's coverage determination was not unreasonable." ECF No. 21-1 at

To state a plausible claim for common law bad faith in Colorado, Plaintiff must allege that Defendant acted unreasonably and either knowingly or recklessly ignored the validity of Plaintiff's insurance claim. *See Checkley v. Allied Prop. & Cas. Ins. Co.*, 635 F. App'x 553, 559 (10th Cir. 2016) (citing *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)). For a plausible statutory bad faith claim, Plaintiff must allege that a benefit to which it was entitled under the policy was unreasonably delayed or denied. *Wahlert v. Am. Standard Ins. Co. of Wis.*, 173 F. Supp. 3d 1187, 1193 (D. Colo. 2016) (citing Colo. Rev. Stat. § 10-3-1116(1)). "The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004); *see also Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011). "The aid of expert witnesses is often required in order to establish objective evidence of industry standards." *Goodson*, 89 P.3d at 415. Moreover, "[w]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Wahlert*, 173 F. Supp. 3d at 1194 (quoting *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012)). "[A]n insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis." *Zolman*, 261 P.3d at 497.

In this case, taking Plaintiff's allegations as true, the Court finds Plaintiff plausibly alleges both a statutory claim and a common law claim for bad faith. With respect to whether Defendant acted unreasonably, Plaintiff alleges Defendant's claims adjustor, Thompson, was inexperienced in adjusting commercial properties, yet Defendant relied on his estimate in initially denying and delaying benefits payments. In addition, although Defendant hired two additional contractors to

---

13-14.

provide damage estimates, Plaintiff alleges they both ignored or failed to consider damage to certain parts of the Property. Typically, in cases like this, the parties employ experts to opine whether such conduct aligns with industry standards. The Court finds a reasonable juror could determine such conduct to be unreasonable.

As for the second prong of a common law bad faith claim—knowing or reckless disregard of the validity of Plaintiff's insurance claim—Plaintiff alleges that Defendant's agent, Mr. Gimple, reacted to viewing the roof by proclaiming it to be "destroyed" and Ms. Stehnike later told Plaintiff the roof would be "replaced," yet the estimate Defendant provided the Plaintiff reflected a gross undervalue of the roof's replacement cost. Moreover, Plaintiff alleges that Defendant continued to rely on its estimates despite the fact that they omitted numerous items of damage found by Plaintiff's contractors. The Court finds these allegations, taken as true, state Defendant's knowledge or reckless disregard of the actual value of Plaintiff's insurance claim.

Based on these findings, the Court respectfully recommends that Judge Blackburn deny Defendant's motion to dismiss the Plaintiff's statutory and common law bad faith claims.

## CONCLUSION

In sum, the Plaintiff has conceded that it has prematurely alleged a request for exemplary damages; construing Defendant's motion as a request to strike the Plaintiff's exemplary damages request from the Amended Complaint, this Court recommends that Defendant's motion be granted. Plaintiff also concedes the need for an appraisal and this Court has imposed a stay of the proceedings pending completion of the appraisal process; accordingly, the Court recommends that Defendant's motion to dismiss the breach of contract claim be denied. Finally, this Court has determined that Plaintiff states plausible claims for statutory and common law bad faith and recommends that Judge

Blackburn deny Defendant's motion to dismiss the bad faith claims.

Therefore, the Court respectfully recommends that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed January 4, 2019; ECF No. 20] be **granted in part and denied in part** as set forth herein.[6]

Respectfully submitted this 16th day of May, 2019, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

---

[6]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).